GEORGE B. BROWN v. JOHN MITCHELL ET AL.

No. 2797.

**1. Presumption.**—The decree of a Probate Court of another State, properly certified, which assumes to change the name of a minor and decree her adoption by those not her parents as their child, will be presumed to be legal, and to have been rendered after jurisdiction had properly attached, though such presumption is not conclusive.

**2. Pleading.**—A plea which contains only conclusions from facts not stated should be stricken out on exceptions. Thus in a suit attacking the validity of a will an allegation that the defendant and another "conspired and confederated with themselves

| 75 | 9 |
| 79 | 412 |
| 75 | 9 |
| 87 | 142 |
| 75 | 9 |
| a88 | 355 |

and others, and used and exercised undue influence over said [the testatrix] in order fraudulently to procure the execution of such instrument in writing," is bad on demurrer.

3. **Will.**—The probate of a will can not be set aside on proof of facts which do no more than show that an opportunity to exercise undue influence existed, or to raise a bare suspicion that such influence may have been used.

4. **Evidence—Depositions.**—The answer of a witness to an interrogatory when testifying by interrogatory can not be excluded on objection raised for the first time during the trial.

5. **Evidence—Wills.**—In a suit by a son attacking the validity of the will of a deceased parent, and against a surviving parent, such surviving parent claiming under the will is not a competent witness to establish statements made by the deceased spouse affecting its validity.

6. **Evidence—Opinion of Witness.**—The opinion of one who is present when a will is signed, and who witnessed the appearance, heard the conversation, and who can state the condition of the testator at the time, is admissible in evidence on the question of mental capacity.

7. **Wills.**—While it is true that capacity in the testator to understand the nature and extent of property disposed of by will must exist at the time the will is made, it is not necessary to its validity that an actual knowledge in the mind of the testator of the extent and nature of the property disposed of by will should exist. See opinion for a charge on this subject held erroneous.

APPEAL from Tarrant. Tried below before Hon. R. J. Boyken, Special Judge.

The opinion states the case.

*Ball & McCart*, *Ross, Herd & Ross*, and *Templeton & Kern*, for appellees.—1. The court did not err in overruling defendant's third special exception to that part of plaintiffs' petition pleading fraud, and the exercise of undue influence by defendant and others over deceased. McCauley v. Long & Co., 61 Texas, 74; Rule 2 for Dist. Ct.

2. The court properly admitted in evidence the certified copy of the proceedings in Probate Court of Wayne County, Michigan, adopting Lizzie Winters as the heir of Geo. B. and Lizzie Brown.

3. This being a suit to set aside an order of court probating a will, and therefore a proceeding *in rem*, the heirship of the contestants was and is not a material issue, and the admission or rejection of the deed of adoption therefore became immaterial. Steele v. Renn, 50 Texas, 481; Pennoyer v. Neff, 95 U. S., 734.

4. The court did not err in excluding the testimony of defendant George B. Brown. Rev. Stats., art. 2248; Railway v. Mackie, 71 Texas, 496.

5. The court properly overruled defendant's objections to the tenth and twelfth direct interrogatories propounded to Martha Livingstone.

In answer to the questions as to how deceased looked and acted during the last twelve or fifteen days of her sickness, and at the time of the execution of the will, and as to the condition of deceased's mind at said

time, witness stated that she had known deceased some time; that she was in the room with deceased when said will was made; that deceased was very sick at the time; that deceased had been out of her head all morning, seeing persons long since dead, and holding conversations with them; that deceased was very weak and had to be lifted up in bed and have her hand guided while she made her mark to the will; and that all day deceased looked like she was about to die. Garrison v. Blanton, 48 Texas, 300; Cockrill v. Cox, 65 Texas, 669; Irish v. Smith, 11 Am. Dec., 655, and cases cited; Schoul. on Wills, sec. 201.

6. The court's charge is a full and clear presentation of the law under the issues made by the pleadings and evidence. Garrison v. Blanton, 48 Texas, 300; Cockrill v. Cox, 65 Texas, 669; Vance v. Upson, 66 Texas, 476; Kelly v. Settegast, 68 Texas, 13; Freiberg v. Johnson, 71 Texas, 558; 1 Redf. on Wills, 4 ed., pp. 129, 130; Schoul. on Wills, secs. 226, 228.

*F. M. Brantley* and *D. W. Humphries,* for appellant.—1. The court erred in overruling defendant's third special exception to that part of the plaintiffs' petition charging fraud and the exercise of undue influence by defendant and others over the testatrix. Hendrix v. Nunn, 46 Texas, 141; Austin v. Talk, 20 Texas, 165; Williams v. Warnell, 28 Texas, 611; Sayles & Bass. Plead., sec. 26; Wright v. Wright, 3 Texas, 180.

2. A certified copy of the probate records from another State of a written instrument purporting to have been executed by a married woman adopting one as an heir, but not appearing to have been duly authenticated or acknowledged as deeds of married women are required to be, is not admissible in this State in proof of such claim of heirship, especially in the absence of proof that such authentication, acknowledgment or record are authorized by or in compliance with the laws of such foreign State. Rev. Stats., arts. 1, 2, 4310, 4313; Rice v. Peacock, 37 Texas, 392; Ruleman v. Pritchett, 56 Texas, 482; Langton v. Marshall, 59 Texas, 296; Johnson v. Bryan, 62 Texas, 623.

3. A certified copy from the records of a foreign State of a written instrument of adoption executed, acknowledged, and recorded in such State, but not in conformity with the requirements of the laws of this State, is not admissible in evidence in this State in proof of a claim of heirship, in the absence of proof that such execution, acknowledgment, or record thereof was authorized by or in compliance with the laws of such foreign State. Smith v. Smith, 1 Texas, 625; Franks v. Hancock, 1 Posey's U. C., 564; Green v. Rugely, 23 Texas, 540.

4. An objection to the answer to an interrogatory as not responsive can not be made for the first time during the trial, and comes too late when the answer is offered in evidence on the trial. Rev. Stats., arts. 2235, 2537; Lee & Co. v. Stowe & Wilmering, 57 Texas, 444; Weeks on Dep., sec. 404, p. 473.

5.  The court erred in excluding the offered evidence of defendant while testifying in his behalf.   The real consideration and intention of the parties to a written contract of adoption, like the consideration of any other written contract, may be shown by parol evidence, and the conditions and surroundings and acts of the parties at the execution of the same may be shown in arriving at such consideration or intention.   Haldeman v. Chambers, 19 Texas, 1; Goldman v. Blum, 58 Texas, 630.

6.  In a suit instituted seeking to set aside and cancel the probate of the will of a testatrix on the alleged ground of lack of testamentary capacity and fraud and undue influence, evidence of repeated declarations of the testatrix some time prior to the making of the will, as well as immediately before the making of the same, also directions given by the testatrix concerning the preparation and drawing of the same, also declarations of the testatrix at the time of executing the will, as well as shortly afterwards, concerning the same, are each respectively admissible in evidence in answer to such charge of fraud, undue influence, or lack of testamentary capacity, and the defendant to said suit, the beneficiary under said will, is not incompetent to testify thereto.   1 Redf. on Wills, sec. 36, par. h; Boberts v. Traiwick, 17 Ala., 55.

7.  Witnesses are not permitted to give their opinions as to whether they should think the testatrix capable of making a will, to impeach a will, especially where it is not shown that the witness is informed what measure of capacity the law requires, as such question is one of both law and fact, and to be determined by the jury under proper instructions.

8.  The court erred in refusing to submit to the jury defendant's special request to charge to the effect that the law does not require the same amount of capacity to make a valid will as to make an ordinary contract. The measure of testamentary capacity the law requires is that the testator shall know or understand what he is about and to whom he is bequeathing his property, because embodying a true exposition of the measure of testamentary capacity, and not given elsewhere in the charge. Vance v. Upson, 66 Texas, 479; 1 Redf. on Wills, sec. 15, par. 12; Terry v. Buffington, 11 Ga., 337; Converse v. Converse, 21 Vt., 168.

STAYTON, CHIEF JUSTICE.—This is a proceeding instituted in the County Court for Tarrant County by John Mitchell and Lizzie Winters to set aside the probate of the will of Mrs. Lizzie Brown.

Mitchell claimed to be the son of Mrs. Brown and Lizzie Winters claimed to be an adopted daughter.   Mrs. Lizzie Brown was the wife of appellant at the time of her death, and there was evidence tending to show that John Mitchell was her son by a former marriage.

The evidence of the relationship of Lizzie Winters to Mrs. Brown consisted: 1.   Of a copy of an instrument purporting to be signed by Brown and wife and by the parents of the child, whereby Brown and wife, in

terms, adopted the child, and her parents consented thereto and agreed that she should bear the name of her adopted parents in the future. This was acknowledged by all the parties to it before a notary public in the State of Michigan, where all the parties were then domiciled.

2. A decree of the Probate Court for Wayne County, State of Michigan, showing its action on the paper before referred to, which, after reciting the substance of the contents of the act of adoption and many other things, among which was a reference to the act of the Legislature of the State under which the procedure was had, proceeded as follows:

"I, the said judge of probate, in pursuance of the act aforesaid, do order that the said George and Elizabeth Brown do stand in the place of parents to said child, and that her name be changed to Nettie Elizabeth Brown, and that this order be entered in the journal of the Probate Court for said county of Wayne.

[Signed]                                     "ALBERT H. WILKINSON,
                                                    "Judge of Probate."

The decree refers to the act of adoption and is duly certified in accordance with the act of Congress.

This evidence was objected to on the ground:

1. That the act of adoption was not acknowledged or certified to have been acknowledged as are deeds and other papers executed by married women required to be by the laws of this State.

2. Because no proof was offered of any law of the State of Michigan authorizing the proceedings recited in the papers.

These objections were overruled, and had there been nothing more than the act of adoption signed by the parties and acknowledged as it was, the objection should have been sustained on both grounds urged; but we are of opinion that the decree of the Probate Court was properly admitted without proof as to the law in force in the State of Michigan, for it ought to be presumed, in the absence of evidence to the contrary, that the court had jurisdiction and that its proceedings were legal. Bryant v. Kelton, 1 Texas, 436.

Such presumption, however, would not be conclusive, and it would be the right of appellant to show that the court had no jurisdiction either of the subject matter or parties. It is proper further to say that the fact of adoption was admitted by appellant.

The only reason why the relationship of appellees to Mrs. Brown became important in this proceeding was that it was necessary for them, or at least one of them, to show an interest in the will.

The action could have been sustained if only one of the contestants showed such interest.

The answer of appellant denied that appellees were related to the testatrix, but neither party requested the court to submit an issue as to that, and none was submitted.

It would seem that such an issue should be presented in cases of this character, and tried as are matters in abatement.

No question is now raised as to the effect which could be given to an act of adoption by a married woman domiciled in another State.

Appellees asked that the probate of the will be set aside on two grounds:

1.   Because it was executed through undue influence exercised over the testatrix by appellant and others.

2.   Because the testatrix had not sufficient mental capacity to make a will at the time it was executed.

Appellant excepted specially to so much of the petition as set up undue influence, and the grounds of the exception were as follows:   "The petition failed to show the nature of or what fraud or undue influence was used or exercised, or how or in what manner the same was used or exercised in order to procure the execution of such will."   This was overruled.

The averment of the petition was:   "Your petitioners further allege that said George B. Brown and J. G. Simpson conspired and confederated with themselves and others, and used and exercised undue influence over said Lizzie Brown, deceased, in order to fraudulently procure the execution of said instrument in writing."

This was the mere statement of conclusions without the statement of a single fact to support them, and the exception should have been sustained. Wright v. Wright, 3 Texas, 181; Hendrix v. Nunn, 46 Texas, 149.

The evidence bearing on the issue of undue influence was no more specific than the pleading, and we are of the opinion that there was no such evidence as justified the court in submitting that issue to the jury.

That such an issue was submitted is assigned as error, and the assignment must be sustained.

The probate of a will can not be set aside on proof of facts which at most do no more than show that opportunity to exercise undue influence may have existed, or to raise a bare suspicion that such influence may have been used.

The real issue in this case was, whether Mrs. Brown had testamentary capacity at the time the will was executed, and on that question there was great conflict in the evidence.   We do not deem it proper or necessary in the disposition of the case to express any opinion as to the sufficiency of the evidence to sustain or defeat the will.

Many questions were raised on the trial as to the admission and rejection of evidence, but the rulings thereon will be considered only so far as the same questions are likely to arise upon another trial.

Mrs. Blandin testified by deposition to statements made by the deceased prior to making the will, to the effect that her husband had worked hard to make the property owned by them, and that at her death she wanted him to have it.   The objection, urged for the first time during the trial,

was that the answer was not responsive to the interrogatory. A part of
the answer which gave her reason for desiring her husband to have the
property was excluded. The answer may not nave been strictly respon-
sive to the interrogatory, but whether so or not, it was error to exclude
any part of it on objection made for the first time during the trial. Lee
v. Stowe, 57 Texas, 444.

The court did not err in excluding evidence offered to show the reasons
which induced appellant and wife to adopt the child before referred to,
nor in excluding the evidence as to what property appellant and his wife
then had or expected to have.

Appellant proposed to testify in his own behalf to many declarations
made to him by his wife before and after the will was made, which would
have been admissible coming from a disinterested witness, but they were
objected to on the ground that they were statements by the deceased
which could not be proved by his evidence.

This is, in effect, an action by the heirs of the deceased arising out of
a transaction with her, if they sustain to her the relation claimed, and
we are of opinion that appellant can not be permitted to testify to any
statement made by her having bearing on the validity of the will in con-
troversy. Rev. Stats., art. 2248.

Mrs. Livingstone, who was present when the will was executed, stated
fully the condition of Mrs. Brown at that time, her appearance and con-
versation, and the court did not err, in connection with this evidence, in
permitting the witness to give her opinion as to her mental capacity at
that time. Garrison v. Blanton, 48 Texas, 303; Cockrill v. Cox, 65
Texas, 669; Bush. on Insanity, 240-249; 1 Redf. on Wills, 140-145.

The testimony of the attending physician was of the same character
as that given by Mrs. Livingstone, and was properly received, as was that
of the witness Perry.

A statement here of the testimony of these and other witnesses would
serve no useful purpose, and it is sufficient to say that it was such as
showed that they were familiar with the condition of Mrs. Brown, and
with the facts which tended to show her mental condition.

After instructing the jury what issues they should consider, and how
they should decide in case they made certain findings, the court below
instructed the jury that "in determining whether or not she had the
mental capacity to make said will, you will determine from all the evi-
dence before you whether or not at the time of her signing said will she
knew what she was doing, understood the nature of the business she was
engaged in, the nature and extent of her property, the person to whom
she meant to devise the same, and whether or not she had the capacity
to concentrate or fix her mind upon the objects of her bounty."

The inquiry to which the mind of the jury was intended to be called
by this charge was the vital one in the case, for by it and preceding

parts of the charge the jury were instructed to determine whether the testatrix had testamentary capacity at the time she executed the paper admitted to probate.

The charge in effect informed the jury that the determination of that question depended upon the relation of other issues of fact therein enumerated, which relate not solely to the capacity of the testatrix to know or understand, but to her actual knowledge or understanding of the matters referred to.

If there be matters to which the mind of the jury was directed which it was not necessary that the testatrix should have known or understood to give validity to the will, then the charge was misleading.

The evidence is clear that the paper was correctly read to the testatrix before she executed it, and that it was executed in the mode required by the statute. There is no pretense that the testatrix was deaf or her hearing in any way defective, and under this state of facts, although the charge should have directed the jury to inquire as to the capacity of the testatrix to know and understand, no injury probably resulted from so much of the charge as directed the jury to inquire whether "she knew what she was doing and understood the nature of the business she was engaged in," for if she did not, the inference that this was because she had not sufficient capacity almost necessarily follows.

There is no doubt that capacity to understand the nature and extent of the property disposed of by will must exist at the time a will is made, but it is not true that actual knowledge or understanding of the extent and nature of property disposed of by will is necessary to the validity of such a disposition.

The charge given required the jury to determine whether the testatrix had knowledge of or understood those things, and they must have understood, if they believed that she had not such knowledge or understanding, that the will was invalid.

If actual knowledge or understanding of the nature and extent of property devised was necessary to the validity of a will, but few wills by which considerable estates are disposed of would be valid.

The question is one of capacity to know, and not of actual knowledge, and the want of the latter can not be made the test of the existence of the other.

The succeeding paragraph of the charge was as follows: "If she had the capabilities mentioned in the preceding paragraph, you will conclude that she had sufficient capacity to make such will. If she did not have such capabilities, then you will conclude that she did not have sufficient mental capacity to make such will."

The preceding paragraph, except in the last clause, had not mentioned or enumerated "capabilities," but had referred to matters of actual knowledge of things, the result of the exercise of capacity.

The preceding paragraph undertook to inform the jury what they must consider in order to determine whether testamentary capacity existed, and the facts so to be considered did not relate to capacity to know or understand, but to knowledge or understanding of the enumerated facts.

In the paragraph of the charge last quoted, the jury most probably understood the court to instruct them that the testatrix had not sufficient mental capacity to make a will unless she knew what she was doing, understood the nature of the business she was engaged in, the *nature and extent of her property,* the person to whom she meant to devise it, and, further, had capacity to concentrate or fix her mind upon the objects of her bounty.

As before said, this presented a test of testamentary capacity which the law does not recognize. It was necessary that the testatrix should know what she was doing, and understand the nature of the business and act she was engaged in at the time she executed the paper, but in the absence of fraud or undue influence, the paper having been executed in the form and manner required by law, whether she knew all the facts necessary to give validity must be determined by her capacity to know and understand; for if this existed no one can be heard to say that she did not know and fully understand the nature and effect of her act, or that she did not intend to make the disposition of her property evidenced by the will.

The court below might safely have informed the jury that the testatrix had testamentary capacity if her mind and memory were such as to enable her to know and understand the matters referred to in the charge at the time she executed the paper; but it may be doubted if charges enumerating so many things have a tendency to enable juries as clearly to understand their duties in such cases as would a simple charge to the effect that one had testamentary capacity if his mind and memory, at the time the paper was executed, were sufficiently sound to enable him to know and understand what he was doing and the effect of his act.

There are many other questions raised by the assignments of error which will probably not arise upon another trial, and they will not be discussed.

The court below should have sustained the demurrer to so much of the petition as attempted to set up undue influence, and should not have submitted that issue; and we are further of opinion that the charge to which we have referred was calculated to mislead the jury; for which reasons the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 5, 1889.