## Ike Henderson et al. v. Louisiana & Texas Lumber Company.

Decided May 13, 1910.

**1.—Limitation—Possession—Admission of Tenancy.**

In an action of trespass to try title wherein the defendants claimed title under the ten years statute of limitation, to 160 acres of the land sued for, evidence considered as to admissions by defendants that they were not holding the land adversely to the true owner, and held sufficient to sustain a finding by the court against the plea of limitation.

**2.—Same—Public Land.**

Intimated that the occupancy of land under the belief that it was public land and with the intention of preempting it, would not be such adverse possession against the owner as would vest title in the occupant under the statute of limitation.

**3.—Deposition—Answer not Responsive—Practice.**

An objection to the answer of a witness, testifying by deposition, that the answer is voluntary and not responsive to the interrogatory, goes to the manner and form of taking and must be made in writing and notice thereof given to the opposite party before the commencement of the trial.

**4.—Trial—Testimony—Harmless Error.**

Where the answer of a witness to one interrogatory is subject to the objection that it is not responsive, but to another interrogatory the same answer is made and it is directly responsive thereto, the action of the court in overruling the objection to the first answer becomes harmless error.

**5.—Same—Explanatory Statements.**

Where the testimony of a witness as to statements and transactions be-

tween himself and a third party is merely explanatory of his subsequent conversations and transactions with the defendant, said testimony is admissible for said purpose.

**6.—Interrogatory—Failure to Answer—Who Might Object.**

Where a plaintiff, for the purpose of proving tenancy by the defendant, asked its witness by interrogatory, among other things, whether or not defendant had paid rent on the land in controversy, the defendant can not complain of the action of the court in refusing to strike out the entire answer because the witness had failed to answer that portion of it.

**7.—Written Instrument—Non Est Factum—Issue of Fact.**

Where a defendant in trespass to try title denied under oath the execution of a written instrument relied on by plaintiff to prove tenancy of the defendant, testimony as to the execution by defendant of said instrument considered, and held sufficient to raise an issue of fact as to the execution of the same and therefore to require the admission of said instrument in evidence to be considered in connection with said testimony.

Appeal from the District Court of Houston County. Tried below before Hon. B. H. Gardner.

*Moore & Sallas,* for appellant.

*Nunn & Nunn,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellee against the appellants, Ike Henderson and wife Fannie Henderson, to recover the title and possession of a tract of 400 acres of land in Houston County, known as I. & G. N. R. R. Survey No. 39.

The defendants disclaimed as to all of the land except 160 acres described in their answer, as to which they pleaded not guilty and title by limitation of ten years.

The trial in the court below was without a jury and resulted in a judgment in favor of plaintiff for all of the survey involved in the suit.

Plaintiff has a perfect record title to the land in controversy, from and under the sovereignty of the soil, and is entitled to recover unless defendants have shown title to 160 acres of the survey under the ten years statute of limitation. The evidence upon this issue is as follows:

Defendants built a house and established their home upon the land, eighteen or twenty years before this suit was filed on February 6, 1909, and have lived thereon continuously to the present time. Both defendants testified that they had claimed 160 acres of the land continuously since they settled thereon. Several witnesses corroborated defendants as to the length of time they had lived on the land.

A. McTavish, a witness for the plaintiff, testified that in 1899 and 1900, he resided in Houston County and was in the employment of the plaintiff, his duties being those of purchasing agent in the land department of the company, and that he became acquainted with the defendant, Ike Henderson, on June 27, 1900. The circumstances under which he became acquainted with Henderson, and the trans-

action had with him as detailed by this witness are, in substance, that in his negotiations as agent of the plaintiff for the purchase from the New York & Texas Land Company of a number of surveys of land, among them being the survey in controversy, he discovered that there were many squatters on said lands, and, under an agreement with the New York & Texas Land Company, he visited each of these squatters to ascertain what claim he was asserting to the land on which he lived, and to see if a satisfactory arrangement could be made in regard to the matter.

On June 27, 1900, he went to the house of defendants for the purpose above stated. Ike Henderson was not at home, but witness was directed to a field about a mile and a half distant on another survey of land, and proceeding there he found the defendant plowing cotton. The conversation and transaction then had between the witness and the defendant is thus stated by the witness:

"I asked him where he was living and upon what land he was living, and he replied that he was living on railroad land. I asked him if he owned the land he was living on, and he said no, that he asserted no claim to it whatever, that he was simply living there and expected to buy it some day. I then told him my business, that I was there to see him for the New York & Texas Land Company, to ascertain whether or not he laid any claim to the land, and he said that he did not want any suit or any trouble about the land whatever. I then asked him if he still desired to purchase it, and he said that he did, and I prepared an application to the New York & Texas Land Company, and read it over to him, or rather made his mark, and I witnessed same."

This witness further testified: "I know that Ike Henderson had a little cabin on this survey, and had possibly four or five acres under fence, to which he said he laid no claim, and after the company purchased the land and after he had made application to buy it, he continued to live on the land, and recognized it as belonging to the plaintiff, and worked for the company, and helped to move the timber from the land adjacent to the cabin in which he was living, and worked on a farm in the same survey for the company the greater portion of his time for about three years, and during this entire period of time he asserted no claim to the land. In 1905 or 1906, the defendant, Ike Henderson, worked the company's farm which, I stated above, was on this same survey, but it may be that it lies adjoining this survey; at any rate it is about one-fourth mile from the house the defendant, Ike Henderson, lived in, and worked said farm on the halves, and he told me that he expected to make about two bales of cotton, and make payment on the place he lived on. He frequently mentioned making a payment on the place as soon as he got able, and always recognized and said that the property on which he lived belonged to the plaintiff."

In connection with this testimony plaintiff offered in evidence the following instrument which was identified by MacTavish as the application made by the defendant for the purchase of the land:

"Colthorp, Texas, June 27, 1900.

"The N. Y. & T. Ld. Co., Ltd.,

Austin, Texas.

"Dear Sirs:—I´ hereby apply to you to purchase from you a part of survey No. 39, I. & G. N. R. R. Co., the same being that part upon which my present enclosure is situated and upon which I am now your tenant.

His

Ike X Henderson"

Mark

"Witness: A. MacTavish."

W. H. McGregor, who succeeded MacTavish in the employment of plaintiff, testified:

"I went to see Ike Henderson and talked with him four or five times about the land he was occupying. I think the first time I talked with him was October 2, 1908. I went to see him about the rent, and in the conversation I asked him if he had signed the application to buy the land that MacTavish had turned over to me, and he said he did sign it. He asked me what rent I wanted and I told him five dollars a year. He agreed to pay it in two weeks. He put it off from time to time until the fourth or fifth time I went to see him, and then he refused to pay it. The first time I went to see him he did not say that he claimed it. He asked me if he could fence up another tract and I told him he could fence it and use it three years for his trouble. That was a small piece of four or five acres that had been cultivated before that, but it was lying out then. That conversation occurred in a little field away from the house, where he took me to get away from the house. I never heard anything about his claim until the fourth or fifth time I went to see him. I would judge that was in the latter part of November or in December. I did not understand then that he was claiming anything. He said he had not signed that application to buy the land from MacTavish, and that he was not going to pay any rent. The first time I saw him he admitted that he had signed that application, and agreed to pay five dollars a year rent. When I succeeded Mr. MacTavish he turned over to me all books and papers in his office—part of them, at any rate. The first knowledge I had of that application was when Mr. MacTavish told me he had it. He told me that in his office in Kennard."

Ike Henderson expressly denied making the statements testified to by MacTavish and denied making the application for the purchase of the land. He also denied that he had admitted to McGregor that he did not own the land, and that he had signed the application to purchase from the New York & Texas Land Company. He admitted, however, that at first he agreed to pay McGregor rent for the place, but after thinking it over he decided not to do so, and so told McGregor. He also testified that when he went on the land he thought it might be public land, and that he supposed he went there with the idea of pre-empting it if he could. He further testified: "I reckon it has been about a year or two, or two or three years, since I learned it was not public land. I am sure it has been that long."

Fannie Henderson testified that she had always claimed the place as her home, and that she knew nothing about any agreement with MacTavish.

This evidence is amply sufficient to sustain the finding of the trial court that defendants' occupancy and possession of the land was not shown to be adverse to the true owner for a sufficient length of time to vest title in them by limitation.

As we conceive the law to be, the occupancy of the land by the defendants under the belief that it was public land, and with the intention of pre-empting it, would not be such adverse possession against the owner as would vest title in the occupants. There is some confusion in the decisions upon this point, and it has not been definitely settled by the Supreme Court. We discussed this question in the recent case of Jones v. Weaver, 122 S. W., 619, and refer to our opinion in that case for a fuller statement of our views upon the subject. If this view of the law is correct, the evidence in this case not only justified, but required a finding in favor of plaintiff.

In addition to this, the testimony above set out is sufficient to sustain the finding that the defendant, Ike Henderson, never at any time claimed to own the land, and when he learned that it belonged to the New York & Texas Land Company made application to purchase it, and acknowledged that he was occupying it as the tenant of said company.

These conclusions dispose of the sixth assignment of error, which attacks the judgment on the ground that it is not supported by the evidence, and said assignment is overruled.

The first, second and third assignments of error complain of the ruling of the court in admitting in evidence over the objections of the defendants the testimony of the witness MacTavish before set out. This witness testified by depositions. The objections to the testimony were as follows: "Because the same is information volunteered by the witness; and is a matter about which he was not interrogated in the interrogatory; and is not such an answer as could have been contemplated by defendant; and being a voluntary statement by witness, the defendant had no opportunity of crossing him; and because the witness states a conversation in transactions with other parties at a time when defendant was not present, and such statements and transactions would not be admissible as against this defendant."

The objection that the answer of the witness was voluntary and not responsive to the interrogatory goes to the form and manner of taking the deposition, and under article 2289 of the Revised Statutes, this objection could not be entertained unless made in writing and notice thereof given the opposite party before the commencement of the trial. Lee v. Stowe, 57 Texas, 444; Missouri Pac. Ry. Co. v. Ivy, 71 Texas, 417; Brown v. Mitchell, 75 Texas, 15; Harris v. Nations, 79 Texas, 412; Wright v. Wren, 16 S. W., 996. It does not appear from the record in this case that the objections were made in writing and notice thereof given the plaintiff before the trial. So far as is shown by the record the objections were only made orally, and not until the deposition was offered in evidence. The record further shows that while the testimony of the witness before set out, given in answer to the

first interrogatory, was subject to the objection that it was not responsive to the questions propounded by the interrogatory, the same testimony was given in answer to the third interrogatory and was directly responsive thereto. Such being the case, any error in admitting the testimony in answer to the first interrogatory was harmless.

There is nothing in the objection to that portion of the testimony stating the agreement or understanding between the witness and the New York & Texas Land Company. This part of the testimony was only explanatory of the purpose of the witness in calling upon the defendant, and obtaining the information as to defendants' claim to the land, and was clearly admissible for such purpose.

The fourth assignment complains of the ruling of the court in refusing to strike out the answer of the witness to the sixth interrogatory propounded to him by the plaintiff, because he failed to state in answer to said interrogatory whether or not the defendants had paid plaintiff rent for the land in controversy. Defendants had not asked the question, and we fail to see upon what ground they can complain of the failure of the witness to answer it.

The fifth assignment complains of the ruling of the court in not sustaining the objections of defendant to the introduction in evidence of the application to purchase and the acknowledgment of tenancy by the defendant, Ike Henderson, before set out. The objection to this evidence was, that defendants having in their pleadings denied under oath the execution of this instrument, and no sufficient proof of its execution having been offered, it was not admissible in evidence. The evidence before set out was clearly sufficient to raise the issue of the execution of the instrument by the defendants, and such being the case, the instrument was admissible in connection with the proof of its execution and it was for the court, in the absence of a jury, to determine from all the evidence whether the instrument was in fact executed by the defendant.

What we have said disposes of all of the questions raised by the several assignments presented in appellants' brief.

There was no error shown by the record which would authorize a reversal of the judgment of the court below, and it is therefore ordered that said judgment be affirmed.

*Affirmed.*