ROSS v. KELL et al.

(Court of Civil Appeals of Texas. Ft. Worth. May 31, 1913. Rehearing Denied June 28, 1913.)

1. WITNESSES (§ 131*) — INCOMPETENCY — TRANSACTIONS WITH DECEASED—WILL CONTEST.

Under Rev. Civ. St. 1911, art. 3690, making parties in certain actions incompetent to

testify as to transactions with or statements by testator, it was improper in a will contest to permit contestant to testify that he loaned testator certain money, which he always agreed to repay.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 565; Dec. Dig. § 131.*]

2. WILLS (§ 282*)—CONTEST—INSTRUCTIONS—PLEADING.

Where in contestant's pleading in a will contest, specific allegations that false representations were made to the testator were followed by an allegation that the aforesaid undue influence overcame his free agency, and it clearly appeared that the misrepresentations were the only predicate for the allegation of undue influence, such pleading was insufficient to present the issue of undue influence; and hence it was error to instruct upon such subject.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640; Dec. Dig. § 282.*]

Appeal from District Court, Hood County; W. J. Oxford, Judge.

Suit by J. B. Ross to probate the will of M. Kell, deceased, and M. L. Kell and another contest. From a judgment sustaining the contest, proponent appeals. Reversed and remanded.

Hiner & Wilson, of Granbury, and Stephens & Miller, of Ft. Worth, for appellant. R. L. Stennis, of Weatherford, J. C. Wilson, of Ft. Worth, Estes & Estes, of Granbury, and Jno. Davenport, of Wichita Falls, for appellees.

DUNKLIN, J. J. B. Ross instituted this suit in the county court of Hood county to probate a certain instrument in writing purporting to be the last will and testament of M. Kell, deceased; Ross being named as independent executor of the will. Texanna Kell and Mrs. Christina Foreman, daughters of the deceased, were the principal beneficiaries of the will. Mat L. Kell and T. J. Kell, two of the sons of the deceased, contested the application for the probate of the instrument, but in the county court the contest was overruled, and the will duly admitted to probate. The contestants appealed the case to the district court of Hood county, in which court J. S. Kell, another son of the decedent, also appeared as a contestant, adopting the pleadings of the other two contestants. A trial in the district court before a jury resulted in a judgment sustaining the contest, from which judgment proponent Ross has prosecuted this appeal.

By the terms of the will two lots in the town of Granbury, apparently of little value, were devised to Henry C. Kell, another son of testator, but soon after the execution of the will testator executed to Henry C. Kell a bill of sale to a stock of horses and cattle. The tenth and eleventh paragraphs of the will are as follows:

"Tenth: My deceased wife and myself having already advanced to my son Mat L. Kell, 160 acres of land known as the Bruington place in Hood county, Texas, by deed duly recorded in the Deed Records of said county, which land was valued at about the sum of eighteen hundred dollars ($1,800.00), and also having advanced to him two black mares of the value of one hundred dollars, and also having advanced to him four hundred and fifty dollars in cash with which to assist him in making payments on lands purchased by him and owned by him in Hood county Texas, all of which advancements were made to him out of the community estate of myself and deceased wife, M. C. Kell, it is therefore my will and desire that the said Mat L. Kell have no part or lot in the estate possessed by me at the time of my death, he having already received such portion thereof, and of his mother's estate that I desire him to have.

"Eleventh: I have already advanced to my son T. J. Kell, the sum of seven hundred and fifty ($750.00) dollars which he received from the sale of certain property in Floyd county, Texas, as an advancement to him out of his interest in his mother's estate, and have also advanced to him out of his interest in his mother's estate eight head of horses of the value of sixty-five dollars per head which advancements are about equal to the interest he would be entitled to in his mother's estate; and it is my will and desire that he have no lot or part in my estate at the time of my death."

In the contest filed it was alleged that testator was 85 years of age at the time the will was executed; that by reason of his extreme age and the impaired condition of his health he was not possessed of sufficient mental capacity to make a valid will. As a further ground for the contest it was alleged that the facts recited in the two paragraphs of the will above quoted were false, and that the testator had been induced to believe that the same were true by fraudulent representations made to him by Henry C. Kell, and that by reason of such misrepresentations testator had been induced to exclude Mat L. Kell and T. J. Kell from shares in his estate. The pleading then continues with specific allegations that Mat L. Kell had purchased and paid for the 160 acres of land known as the "Bruington place," and the two black mares mentioned in the tenth paragraph of the will, and further that testator had never at any time advanced to said Mat L. Kell the $450 mentioned in the same paragraph as an advancement, and that neither the money nor the horses mentioned in the eleventh paragraph of the will were ever in fact advanced to T. J. Kell.

[1] Error has been assigned to the admission, over proponent's objection, of the testimony of contestant Mat L. Kell that witness had loaned his deceased father the sum of $485 some 20 years ago with which to assist the father in building his residence, and that the father had always agreed to repay to

witness said sum, and had recognized the justness of the claim. The objection was predicated in part upon the provisions of article 3690, Revised Statutes 1911, which reads: "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Appellees insist that the evidence was not prohibited by the statute, and cite in support of their contention the cases of Martin v. McAdams, 87 Tex. 225, 27 S. W. 255; Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441.

In Martin v. McAdams, it was held that it was permissible to' prove the handwriting of a testator by one of the devisees under the will. The statute above quoted was invoked to support the objection made to that testimony. In deciding that case our Supreme Court held that the testimony of the witness that the will was in the handwriting of the testator was not testimony to any statement by him, nor to any transaction with him, and in discussing the case the Supreme Court used the following language: "The making of a will is a transaction, but it is not a transaction of the testator with the devisees or legatees. The only participants in it are the testator and those whom he may call upon to witness that it is his last will and testament. The devisees may have nothing to do with it, and may in fact be ignorant of its existence, until after the death of the testator."

In the case of Simon v. Middleton, supra, the Court of Civil Appeals for the Fourth District held that it was permissible to prove, by a daughter of the testator, that her father had made certain statements to her, which statements were material to sustain the contest of the will; one of the grounds of contest being the exercise of undue influence upon the testator. The objection urged to that testimony was based upon the statute above quoted. The decision turned upon the conclusion that the suit was not one "arising out of any transaction with such decedent," and hence the statute did not apply. That decision seems to have been predicated upon the quotation above given from the case of Martin v. McAdams. The judgment of the trial court in that case was reversed, and the cause remanded, and an application for writ of error to the Supreme Court in that suit was dismissed for want of jurisdiction.

The case of Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606, likewise was a case of contest of a will upon the grounds of lack of mental capacity in the testator to make a valid will, and upon the further ground that its execution was procured by the exercise of undue influence upon the testator. In that case our Supreme Court, after holding that the first ground stated was the real issue in the case, used the following language: "Appellant proposed to testify in his own behalf to many declarations made to him by his wife before and after the will was made, which would have been admissible coming from a disinterested witness, but they were objected to on the ground that they were statements by the deceased which could not be proved by his evidence. This is, in effect, an action by the heirs of the deceased arising out of a transaction with her, if they sustain to her the relation claimed, and we are of opinion that appellant cannot be permitted to testify to any statements made by her having bearing on the validity of the will in controversy. Rev. Stats. art. 2248."

In the case of Sanders v. Kirbie, 94 Tex. 564, 63 S. W. 626, which was a suit to set aside a will on the ground of undue influence exercised upon the testator, the question certified to the Supreme Court by the Court of Civil Appeals was whether or not certain testimony of some of the devisees under the will relative to statements by the testator was admissible, over the objection predicated upon the statute above quoted, and in that case our Supreme Court used the following language: "The question assumes that article 2302, Revised Statutes (which is the same as above quoted), under which it arises, applies in cases like this, and this seems to be warranted by decisions of this court in which the provision has been so applied. Brown v. Mitchell, 75 Tex. 15 [12 S. W. 606]; Lewis v. Aylott, 45 Tex. 202."

We think the decisions in the two cases last cited are decisive of the question now under discussion, adversely to the appellee's contention, and that the testimony above referred to was improperly admitted.

Other assignments of error are presented to the admission of testimony of like character to that discussed above, but the bills of exception upon which the assignments are predicated are very long, showing a great bulk of testimony, all of which was objected to as a whole, and some of which, possibly, was not subject to the inhibition of the statute above quoted. In view of another trial, it will be unnecessary to do more than to call attention to this fact, without endeavoring to separate that portion to which the statute would apply, as what has been said already will sufficiently indicate our views. Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780; G., H. & S. A. Ry. Co. v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894.

[2] The following is a portion of the charge given by the trial court: "Moreover,

gentlemen, if you believe from the evidence in this case that at the time M. Kell executed said instrument, dated February 6, 1911, which purports to be his last will, his mind was, either from sickness, disease, or mental decay, or from overweaning confidence, subject to the domination and control of his son Henry C. Kell, or of any other of the beneficiaries in said will, and that he, the said Henry C. Kell, or any other of the beneficiaries in said will, exercised such power and control over the mind of the said M. Kell, and over his will, in the disposition of his property by said instrument, as to destroy the said M. Kell's liberty and free agency, and to cause such disposition of his property to be made to suit the will and wishes of Henry C. Kell, or any other of the beneficiaries in said will, and not such disposition of his property to be made as the said M. Kell at said time really willed and' wished, then, in that event also, you will find for the contestants, and against the probate of said will." Error has been assigned to the charge, in part, on the ground that there was no issue of undue influence presented by contestants' pleadings. The effect of the alleged fraudulent representations upon the testator is characterized in contestants' pleading as undue influence, but it is perfectly clear that those misrepresentations were the only predicate for the charge of undue influence. Following specific allegations that the false representations were made, by Henry C. Kell, the pleading contains this paragraph: "Contestants, say that aforesaid false representations, made by said Henry C. Kell and others to contestants unknown to said M. Kell, and the aforesaid undue influence exerted by said Henry. C. Kell and others to contestants unknown upon said M. Kell, overcame and destroyed the free agency and independent volition of the mind of said M. Kell, and caused him to make a will which, but for said false representations and undue influence, however, would not have made, and contestants say that said will, if executed by said M. Kell, was not the will of said M. Kell, deceased, but it is and was the fruits and results 'of an unsound mind, and of said false representations and said undue influence so exerted upon said M. Kell by said Henry C. Kell." Aside from the issue of lack of testamentary capacity in the testator to make a will, the charge should have been confined to the specific allegations of fraud practiced upon the testator by Henry C. Kell, and we are of opinion, further, that the issue of fraudulent misrepresentations by the heirs of the testator other than Henry C. Kell was not presented by the pleadings.

Other assignments of error questioning the sufficiency of the evidence to support the contest will not be considered, in view of another trial, at which time the testimony may be entirely different.

For the errors indicated, the judgment is reversed, and the cause remanded.