**SHELTON et al. v. SHELTON et al.**
(No. 6915.)

(Court of Civil Appeals of Texas. Austin. Feb. 10, 1926.)

1. **Witnesses** ⊝140(9)—**Grantee's wife held disqualified from testifying as to deceased grantor's mental capacity, in suit to set aside deed (Rev. St. 1911, art. 3690).**

In suit to set aside deed from mother, since deceased, to son, refusal to permit son's wife, living on land and asserting homestead interest therein, to testify concerning grantor's mental capacity, was not error, in view of Rev. St. 1911, art. 3690.

2. **Witnesses** ⊝140(4) — **Grantee's brother held disqualified to testify as to deceased grantor's mental capacity, in suit to set aside deed (Rev. St. 1911, art. 3690).**

In suit to set aside deed from mother, since deceased, to son, refusal to permit brother of grantee, who was made defendant because of his refusal to join as plaintiff, to testify as to grantor's mental capacity, was not error, under Rev. St. 1911, art. 3690.

3. **Trial** ⊝56—**Refusal to permit defendants to introduce merely cumulative testimony after plaintiffs' testimony in rebuttal held not abuse of discretion requiring reversal (Rev. St. 1911, art. 1952; Rev. St. 1925, art. 2181).**

In suit to set aside deed, court's refusal to permit defendants, after plaintiffs had offered their rebuttal testimony, to introduce merely cumulative testimony of 10 witnesses as to grantor's mental capacity, held, under Rev. St. 1911, art. 1952, and Rev. St. 1925, art. 2181, not abuse of discretion requiring reversal.

4. **Cancellation of instruments** ⊝46—**In suit to set aside deed, evidence of grantee's application for letters of administration on grantor's estate held properly excluded.**

In suit to set aside deed from mother to son, exclusion from evidence of application by grantee for letters of administration on grantor's estate, filed long after institution of suit, held not error, where there was nothing in suit requiring an administration.

5. **Cancellation of instruments** ⊝51—**Trial** ⊝194(11) — **Instruction purporting to define mental capacity to make deed and want thereof held misleading, objectionable as charge on evidence, and erroneous as indicating that undue influence was element or evidence of want of mental capacity.**

Charge on mental capacity to make deed, which, after defining mental capacity, undertook to define want of it, and in course of such definition said that named facts would not make person incapable of making valid deed, provided she made deed "of her own volition and free from undue influence," held misleading and objectionable as a charge on evidence and erroneous in use of quoted language as indicating that undue influence was element of or evidence of want of mental capacity.

---

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Deeds ⚷196(1).**

In suit to set aside deed, plaintiffs have burden of proving want of mental capacity of grantor.

**7. Deeds ⚷68(1½).**

"Mental capacity" to make deed means capacity to know and understand in reasonable manner, nature and character of transaction (citing Words and Phrases, Second Series, "Mental Capacity").

**8. Appeal and error ⚷1032(3).**

Erroneous charge is presumed injurious, and appellees have burden of showing that it was harmless.

**9. Cancellation of instruments ⚷51—Instruction, defining undue influence as control "in some measure" destroying grantor's free agency, held erroneous.**

In suit to set aside deed, instruction, defining undue influence as some power or control as "in some measure" destroys free agency of grantor, held erroneous, since undue influence to invalidate deed must exist to a larger degree than "in some measure."

**10. Deeds ⚷72(1)—"Undue influence" invalidating deed is influence existing when deed is executed which destroys free agency of grantor and substitutes will of another.**

"Undue influence" invalidating deed means such influence as existing at time of its execution under facts and circumstances of case, destroys free agency of grantor, and substitutes therefor will of another (citing Words and Phrases, Second Series, "Undue Influence").

**11. Cancellation of instruments ⚷51—Court should only define undue influence which will invalidate deed without charging on manner in which it may be exercised.**

In suit to set aside deed, it is sufficient for court to define clearly undue influence and manner in which it may be exercised is matter of doubtful propriety in charge.

**12. Cancellation of instruments ⚷51—Court may properly charge that blood relationship, affection, advice, and ministration alone do not constitute evidence of undue influence invalidating deed.**

In suit to set aside deed, court may properly charge that blood relationship, appeals to affection, advice, and ministration of son to mother should not, alone, be construed as evidence of undue influence.

**13. Cancellation of instruments ⚷51.**

Court may properly instruct that undue influence invalidating deed can be established by circumstances, but should not enumerate circumstances.

**14. Trial ⚷194(9), 240—Charge on undue influence held objectionable as argumentative and on weight of evidence.**

In suit to set aside deed from mother to son, charge on undue influence held objectionable as argumentative and on weight of evidence.

**15. Trial ⚷252(17)—Charge that undue influence might consist of facts not in evidence held erroneous.**

In suit to set aside deed, charge that undue influence might consist of duress, physical force, or coercion, of which there was no evidence, held erroneous.

**16. Deeds ⚷211(4).**

Opportunity to exercise undue influence is not evidence of it.

**17. Trial ⚷244(3)—Charge held objectionable as singling out and emphasizing matters in manner to warrant inference that undue influence invalidating deed existed by reason thereof.**

Charge on undue influence held objectionable as singling out and emphasizing relationship of parties, and age of grantor, and opportunity for undue influence in a manner warranting inference that such influence invalidating deed existed by reason thereof.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by Henry Shelton and others against George Shelton and another to set aside deed. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Callicutt & Upchurch, of Corsicana, for appellants.

W. M. Taylor and S. M. Kerr, both of Corsicana, for appellees.

BAUGH, J. On April 24, 1920, Mrs. Sarah Shelton, a feme sole, owned an undivided interest in 106⅔ acres of land in Navarro county; the remaining undivided interest therein being owned by her children and grandchildren. On that date she conveyed her interest in said land to George W. Shelton, her son, with whom she was then living. On November 6, 1921, she died intestate, and on December 19, 1921, suit was filed by part of her children and grandchildren against George W. Shelton and Charlie Shelton, his brother (who had refused to become a party plaintiff), seeking cancellation of the deed from Mrs. Sarah Shelton to George W. Shelton, to recover rents and to partition said property. Some of the plaintiffs were subsequently dismissed from the suit on their own motion, and the others abandoned their suit for rents and for partition, on the trial seeking only the cancellation of the deed. The grounds alleged for cancellation were failure of consideration, mental incapacity of Sarah Shelton to make said deed, and undue influence over her by George W. Shelton. The case was submitted on two special issues, in answering which the jury found that Sarah Shelton did not have, at the time it was executed, mental capacity to make such deed; and that she was unduly influenced to do so by her son George W. Shelton. Whereupon

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the court rendered judgment canceling said deed, and the said George W. and Charlie Shelton have prosecuted this appeal.

[1, 2] Under their first and twenty-third propositions appellants assert error of the trial court in refusing, to permit the wife of George W. Shelton to testify concerning the mental condition of Sarah Shelton at the time she made the deed in question, and as to other facts and circumstances surrounding the transaction. There was no error in this. She and her husband continuously lived on the property in question and claimed it as their homestead. She had such an interest in it, therefore, as to be precluded under article 3690, R. S. 1911, from testifying as to her husband's transactions with a deceased person, unless called by the opposite party. Simpson v. Brotherton, 62 Tex. 171; Tannehill v. Tannehill (Tex. Civ. App.) 171 S. W. 1051; Leahy v. Timon, 215 S. W. 951, 110 Tex. 73. For the same reason there was no error in refusing to permit the defendant Charlie Shelton, another son and heir of Mrs. Sarah Shelton, deceased, to testify as to said transaction.

[3] We overrule appellant's third proposition. The 10 witnesses offered by them after the rebuttal testimony of appellees, plaintiffs below, was closed was only cumulative on the issue of the mental capacity of Mrs. Shelton, on which they had already introduced 8 or 9 witnesses on examination in chief. Such matters are within the sound discretion of the trial court and not reviewable on appeal unless abused. Article 1952, R. S. 1911; article 2181, R. S. 1925; Delgado v. Gonzales (Tex. Civ. App.) 28 S. W. 459; Donaldson v. Dobbs, 80 S. W. 1085, 35 Tex. Civ. App. 439; Mass. Bonding & Ins. Co. v. Florence (Tex. Civ. App.) 216 S. W. 471; Cooper Gro. Co. v. Hamrick & Co. (Tex. Civ. App.) 229 S. W. 356. However, since the case must be reversed, these witnesses can be introduced at the proper time on another trial and the question here raised need not again occur.

[4] There was no error in excluding from the evidence the application of George W. Shelton for letters of administration upon his mother's estate. This application was filed long after the suit at bar was filed and no further action ever had upon it in the probate court. There was no effort to establish any claim or debt against the estate of Mrs. Shelton. The only issues submitted on the trial were the capacity of Mrs. Shelton to make said deed, and whether she was unduly influenced to do so. No creditor of Mrs. Shelton was a party and nothing was in litigation requiring an administration.

[5] Appellants' propositions 6, 7, and 8 complain of the court's charge on the issue of mental capacity; and propositions 9 to 14 complain of his charge on the issue of undue influence.

On the issue of mental capacity the trial court charged the jury as follows:

"That by the expression 'mental capacity' to make a deed, as used in question No. 1, means: (1) In order to make a valid deed the law requires that a person shall be of sound and disposing mind and memory at the time; that is, at the very time when the deed is made, she must possess such mind and, memory as does enable her to then know and understand the nature and character of the transaction that she is then engaged upon, to recollect and know the amount and character of the property which is being disposed of by the deed, and to call to mind and appreciate the relation that exists between herself and those who are related to her by ties of blood and affection, as well as the relation which exists between herself and those who are named in the deed as grantees, and to understand the nature of the consideration named in said deed. One who has the mental capacity to make a deed has the legal right to deed her property to any one she may see fit for any consideration that is satisfactory to her."

[6] If the charge had stopped there, no very serious objection could be urged to it. From the first sentence thereof the jury might have inferred, however, as insisted by appellants, that it was incumbent upon George Shelton, grantee in the deed, to show that Mrs. Sarah Shelton was of sound and disposing mind at the time. But no such burden was upon him. The legal presumption was that Mrs. Shelton had the mental capacity to make the deed and that it was valid, and the burden rested upon appellees to prove otherwise. The court in his charge did, later on, place such burden of proof on appellees, but the portion complained of could reasonably have misled the jury on that point.

After defining what constituted "mental capacity," however, the trial court then undertook to define "want of mental capacity." His charge thereon was as follows:

"Want of mental capacity to make a deed does not necessarily require that the grantor shall be insane. Weakness of intellect, if any, arising from old age, or arising from bodily infirmities or sickness, or arising from all of these combined, may render a person incapable of making a deed, provided such mental weakness, if any, disqualifies her from knowing or understanding the nature and consequences of the act that she is doing. But neither old age, nor bodily infirmities, nor sickness, nor distress of mind or body will render a person incapable of making a valid deed, provided, at the time she does make it, she has possession of her mental faculties and understands the business that she is then engaged upon, and makes the deed of her own volition, free from undue influence. Also it is not sufficient to set aside a deed, even though you believe that the grantor, if you do so believe, might have lacked sufficient mental capacity, as herein defined to you, to make a valid deed at some time previous or subsequent to the time that the deed in question was executed, but you must believe from the preponderance of the evidence in this case that the grantor, Mrs. Shelton, at the very time she executed the deed in question on April 28, 1920, did not have sufficient mental capacity to make said deed."

[7] In this we think the trial court erred. Mental capacity to make a deed simply means sufficient capacity to know and understand in a reasonable manner the nature and character of the transaction engaged in; that is, in the instant case, the capacity to understand that by the execution of the deed in question she was parting with her title to said land and was vesting same in her son George W. Shelton for the consideration named in said deed. 3 Words & Phrases, Second Series; 18 C. J. 218; Uecker v. Zuercher, 118 S. W. 151, 54 Tex. Civ. App. 289. Such a definition would have been sufficient. Having already defined what constituted mental capacity, the trial court's effort to define want of it was calculated, we think, to confuse and mislead the jury. It was for them, in the light of all the surrounding facts and circumstances to determine whether such capacity was present or lacking. What might or might not cause or bring it about was a question of fact for them. And under the facts in this case the above charge was also upon the weight of the evidence. Not only did it tend, we think, to confuse the minds of the jurors, but it was an erroneous statement of the law.

[8] The appellees sought to cancel the deed on three grounds: Want of mental capacity to make it; undue influence; and failure of consideration. Though the evidence on undue influence was circumstantial and rather meager, we think it was sufficient to go to the jury. The issues of mental capacity and undue influence were submitted to the jury separately and distinctly, and were separately defined in the trial court's charge. In the second portion of the charge above quoted on mental capacity, the trial court told the jury in effect that Mrs. Shelton must have been in possession of her mental faculties and have made the deed "of her own volition, free from undue influence." Having thus stated the law in his charge on mental capacity, we think the jury probably inferred that undue influence was an element of, and evidence of, want of mental capacity. The two are, however, separate and distinct grounds for nullifying a deed and should not be confused. A person of strong mental capacity might be unduly influenced to make a deed, but undue influence necessarily presupposes the existence of mental capacity. Of course, a weakened mind makes undue influence more easily exerted, but lack of mental capacity precludes the possibility of undue influence. Consequently evidence of undue influence should not be construed as evidence of a want of mental capacity. The court's charge in this respect was calculated to mislead the jury and confuse these issues. Brown v. Mitchell, 12 S. W. 606, 75 Tex. 17; Scott v. Townsend, 166 S. W. 1138, 106 Tex. 322; Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1050. Where a charge is erroneous, it is presumed to have been injurious, and appellees must show that it was harmless. Emerson v. Mills, 18 S. W. 805, 83 Tex. 388; Taylor B. & H. Ry. Co. v. Warner, 32 S. W. 870, 88 Tex. 642.

[9] The court's charge on undue influence was as follows:

"In answering question No. 2, hereinafter submitted to you, you will bear in mind the following instruction: That the expression 'undue influence' as used in this question means: (1) Such power and control of and over the mind and conduct of one person by another as in some measure destroys the free agency of the person upon whom such influence is exercised, and which prevents the free exercise by the grantor in a deed of that discretion in her own affairs which the law requires she shall possess at the time of making the deed. It consists of such influences of over-persuasion or coercion, or duress or moral or physical force or control over the grantor as destroys her free agency and will and substitutes therefor, virtually, the will of the person exercising such influence, and which makes the grantor subject to the control of such person. It may consist of any improper or wrongful constraint or urgency or persuasion whereby the will of the grantor is overpowered and she is induced to do or to forbear doing an act which she would not have done, or forborne from doing, had she been left to act freely. Undue influence may be exercised secretly, as well as openly, by excessive importunity or by the silent, resistless power which the strong may exercise over the weak and infirm, and it may be proven by circumstances as well as by direct testimony. (2) Upon the other hand, argument, persuasion, blood relationship, or appeal to the affections, coercion, duress, or moral or physical force or control, which do not destroy the free agency of the grantor, are not undue influence; nor does advice or suggestions or affection or ministrations which fall short of supplanting the will and purpose of another for that of the grantor constitute undue influence. The undue influence which the law prohibits is any act or thing done by any person towards the grantor which influences or overcomes her will, power or memory or freedom of action and substitutes therefor, in some measure, the will and purpose of the person exercising such influence, and procures an act done; the act done in this case, if any, being the execution of the deed in question, and if it falls short of this it would not be undue influence.

"Question No. 2. On April 28, 1920, at the time of making and executing the deed bearing that date, was Mrs. Sarah Shelton unduly influenced, as that term has been heretofore explained to you, to make said deed by George W. Shelton, or any other person acting at his instance or in connection with him? Answer 'yes' or 'no.'"

[10] Appellants made several objections to this charge, but we shall not undertake to discuss them separately. Undue influence which will set aside a deed means such influence as, exercised at the time, under the facts and circumstances of the case, destroys the free agency of the grantor and substitutes therefor the will of another. 18 C. J. 236; 4 Words and Phrases, Second Series,

1055; Scott v. Townsend, supra; Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1050, and cases there cited. It is not sufficient for such influence to "in some measure" destroy the free agency of another, but as stated by Chief Justice Phillips in Scott v. Townsend:

"The issue is proved only when free agency is shown to have been supplanted, * * * independence of volition * * * overcome, * * * and freedom of will * * * subverted."

It is manifest, therefore, that the degree fixed by the court "in some measure" is not sufficient. The will of the grantor must be overcome and supplanted by the will of another. Hart v. Hart (Tex. Civ. App.) 110 S. W. 92.

[11-13] It was sufficient for the trial court to define clearly what constituted undue influence. The manner in which it might be exercised, however, are questions of fact for the jury and for argument of counsel, and of doubtful propriety in a charge. Brown v. Mitchell, 12 S. W. 606, 75 Tex. 17. It was proper for the trial court, where the evidence authorized it, to tell the jury, however, that blood relationship, appeals to affection, advice, and ministrations of the son to the mother should not, taken alone, be construed as evidence of undue influence. Millican v. Millican, 24 Tex. 426; Beville v. Jones, 11 S. W. 1128, 74 Tex. 148. It was also proper for the court to tell the jury that undue influence could be established by circumstances, but not to enumerate the circumstances.

[14, 15] The charge given was likewise subject to appellants' complaint that it was argumentative and upon the weight of the evidence. Bradshaw v. Brown, (Tex. Civ. App.) 218 S. W. 1075. Nor is it necessary to here summarize or set out the evidence. It is also erroneous for the reason that it enumerates elements and influences on which there was no evidence whatever. Houston & T. C. Ry. Co. v. Gilmore, 62 Tex. 391; Wood v. Texas Cotton Products Co. (Tex. Civ. App.) 88 S. W. 497; Taylor B. & H. Ry. Co. v. Warner, 32 S. W. 870, 88 Tex. 642. The record fails to disclose any element of duress, physical force, or coercion over the grantor at the time of the execution of the deed; on the contrary, it shows that none such was exercised. But these elements were included in the court's charge.

[16, 17] Mere opportunity to exert an undue influence is no evidence that same may have been exerted. Especially is this true when the parties live in natural relations to each other as was true in the instant case. The mother had lived with her son on the old homestead for about 20 years and he was the natural recipient of her bounty. Their relations were of course intimate, and, due to her age—she was about 90 years old at the time—she was doubtless dependent upon her son in many respects. But in the absence of an unnatural, improvident, or unreasonable conveyance to him these facts have little or no probative force on the issue of undue influence. Re Fullhas' Estate (Tex. Civ. App.) 228 S. W. 663; Millican v. Millican, 24 Tex. 426; Stolle v. Kanetzky (Tex. Civ. App.) 259 S. W. 658. No presumption of undue influence is raised by the evidence in this case. Rounds v. Coleman (Tex. Civ. App.) 189 S. W. 1090. But the language used in the court's charge did, we think, single out and emphasize in the jury's minds the existence of the relationship of the parties, the age of the grantor, and the opportunity of her son to influence her unduly in such a manner that they could, and probably did, infer that such influence was in fact exerted by reason thereof. See 38 Cyc. 1674, and Texas cases there cited; Bradshaw v. Brown, supra; Gallagher v. Neilon (Tex. Civ. App.) 121 S. W. 569.

The other contentions of appellants not above disposed of relate to the question of the sufficiency of the consideration, but we deem it unnecessary to discuss them here. There is no serious controversy over the sufficiency of the consideration, if the conveyance be not subject to cancellation on the other grounds alleged. On the other hand, if the deed is vitiated on the other grounds alleged, it being a deed of gift, the sufficiency of the consideration is immaterial.

For the errors above pointed out, the judgment is reversed, and the cause remanded for another trial.

Reversed and remanded.