CLARK et al. v. BRILEY et al.   (No. 8482.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 23, 1916. On Motion for Rehearing, Feb. 24, 1917.)

1. WITNESSES ☞131—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED—WILL CONTESTS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, providing that in actions by or against executors or administrators neither party shall be allowed to testify against the others as to any transactions with the testator or intestate,

applies in a proceeding to probate a will as well as in a proceeding to set aside a probate.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 565.]

2. WITNESSES ⏀⏀139(2) — TESTIMONY AS TO TRANSACTIONS WITH DECEASED—WHO ARE PARTIES—PERSONS INTERESTED.

One who has an interest in the controversy and who will be bound by the judgment is a party to the suit within the meaning of Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, prohibiting testimony of parties to transactions with persons since deceased, even though he is not nominally a party.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 583.

For other definitions, see Words and Phrases, First and Second Series, Party.]

3. WITNESSES ⏀⏀139(2) — PARTIES — COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED—WILL CONTESTS—WHO ARE PARTIES—PERSONS INTERESTED.

Where testator made two children his executors and one of them offered the will for probate and asked letters testamentary but the other did not join and the probate was contested, the executor named who did not join was nevertheless a party within Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, prohibiting the parties from testifying to transactions with persons, since deceased, as were the other parties.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 583.]

4. WILLS ⏀⏀324(3) — PROBATE — CONTEST — QUESTION FOR JURY.

If there is evidence to support a verdict that the will was secured by undue influence, such issue is for the jury, although there may be weighty evidence to the contrary.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 769.]

5. WILLS ⏀⏀163(8)—EXECUTION—UNDUE INFLUENCE—PRESUMPTION.

Undue influence in execution of a will cannot be presumed or inferred from opportunity or interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 402.]

6. WILLS ⏀⏀163(1)—EXECUTION—UNDUE INFLUENCE—PRESUMPTION.

To establish condition of undue influence in execution of will, the contestants have the burden of showing opportunity with respect to time and place to exercise undue influence, and that the condition of testator's mind would subject him to undue influence, and that the undue influence was in fact exercised, and that the will was not that of testator, but of the person exercising the influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388, 389, 399, 400.]

7. WILLS ⏀⏀324(3)—EXECUTION—UNDUE INFLUENCE—QUESTIONS FOR JURY—EVIDENCE.

Evidence *held* to present a question for the jury whether the execution of the will was procured by the exercise of undue influence upon the testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 769.]

8. WILLS ⏀⏀166(12) — EXECUTION — UNDUE INFLUENCE—ADVANCEMENTS—EVIDENCE.

The fact that two children were paid small sums to release their interest in their mother's estate and that two others released their interest without payment, although evidence of motive for excluding the first children from participation in the father's estate, is not con-

clusive on the issue of undue influence bringing about such exclusion.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 437.]

9. WILLS ⏀⏀166(1)—EXECUTION—UNDUE INFLUENCE—EVIDENCE.

That testator lived 10 years after executing his will without revoking it would not be conclusive against contestants on the issue of undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 421.]

10. APPEAL AND ERROR ⏀⏀728(2)—SCOPE OF REVIEW—RECORD—SUFFICIENCY.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, providing that an assignment of error shall be sufficient which draws the attention of the court to the error complained of, mere omission of some of the evidence from the assignment which was included in the motion for new trial does not vitiate the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3011.]

### On Motion for Rehearing.

11. APPEAL AND ERROR ⏀⏀392, 395 — NECESSITY OF APPEAL BOND — JURISDICTION — WAIVER OF DEFECT.

Where one of two parties appealing from a decree admitting a will to probate made affidavit under Vernon's Sayles' Ann. Civ. St. 1914, art. 3634, of inability to give a cost bond, but failed to state that there had been diligent effort to secure a bond, and the affidavit was not signed by the other appealing party, such defects were not jurisdictional, and in any event were waived by failure to raise them in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 2089–2094, 3127.]

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Contest of the will of Dr. G. B. Walker, deceased, between Mrs. Etta Briley and another, proponents, and Mrs. Mattie Clark and others, contestants. From an order admitting the will to probate, the contestants appeal. Reversed and remanded.

Preston Martin, of Weatherford, for appellants. Hood & Shadle, of Weatherford, and S. C. Padelford, of Cleburne, for appellees.

DUNKLIN, J. This is a contest of the will of Dr. G. B. Walker, deceased, who died April 23, 1915. By the terms of the will Mrs. Etta Briley and Lee Walker, daughter and son of the testator, respectively, were made the sole beneficiaries and also were appointed independent executors without bond. Item 4 of the will reads as follows:

"Whereas, I have heretofore advanced to my other children moneys more than their inheritable interest in my estate, it is my will, and I so will and direct, that neither they nor their descendants shall have or take any interest in my estate."

Application for the probate of the will was filed by Mrs. Briley in the county court of Parker county, who, in addition to praying for its probate, also prayed for the issuance of letters testamentary to herself and her brother, Lee Walker. The will was con-

---

⏀⏀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tested by Mrs. Mattie Clark and Mrs. J. D. Irby, daughters of the testator. In their pleading filed in the county court, the basis for the contest consisted of allegations that, at the time of the execution of the will, the testator was laboring under a delusion, without any reasonable basis therefor in fact, that contestants were not entitled to any inheritable interest in the estate, in the absence of a will, which delusion was the result of hatred and dislike of the contestants to such an extent as to render him mentally incapable of making a valid will. Upon the hearing the county court admitted the will to probate, and from that order the contestants appealed to the district court, where it was again admitted to probate, and from that order contestants have prosecuted this appeal.

In the district court, the contestants filed an amended plea, wherein they repeated the ground for contest which had theretofore been urged in the county court, to wit, that the testator was laboring under a mental delusion at the time of executing the will which deprived him of sufficient mental capacity to make a valid will, further alleging in that connection that the delusion was brought about by undue influence exercised upon him by his son, Lee Walker, with whom he lived at the time of the execution of the will, and who entertained feelings of hostility towards contestants; that testator was then weak in mind and body, 82 years old, feeble in health, and unable to attend to business. In that pleading, additional to the ground of contest mentioned already, contestants urged as another ground that the execution of the will was induced by undue influence fraudulently exercised upon the testator by his son, Lee Walker, who entertained feelings of ill will towards contestants, and especially Mrs. Mattie Clark, and whose motive for bringing about the execution of the instrument was to gratify such feelings of ill will towards those two sisters, and also to acquire more of the estate than he would have acquired by inheritance if the deceased had died intestate.

The allegations made by the contestants for the purpose of setting aside the will were all duly denied by proponent in her supplemental petition, in which she further alleged that the will was executed several years before the death of the testator, during all of which time he was fully cognizant of its contents.

The will was executed April 20, 1903, at which time testator was 80 years of age. The testator died April 23, 1915, at the age of 92 years, and 12 years after the execution of the will. At the time the will was executed, testator owned a tract of land consisting of 320 acres, which was deeded to his wife, Rachael E. Walker, in the year 1875, but it appears to have been the community property of himself and wife. Several years prior to the execution of the

will Mrs. Rachael Walker died intestate. On January 29, 1901, Walter T. Walker and Henry T. Walker, two other sons of the testator, each executed to their father a deed to all his interest in that tract of land, and in each of said deeds a consideration of $800 paid to the grantor was recited. In March, 1901, Mrs. J. D. Irby also executed a like deed to her interest in the farm to her father for a consideration of $350. The purpose of these deeds was to convey the interest inherited by the grantors from their mother, Mrs. Rachael Walker. Prior thereto there had never been any settlement by the testator with any of his children for their interest in their mother's estate.

On March 17, 1903, a little over one month prior to the date of the will, the testator instituted a suit against Mrs. Mattie Clark, then Mattie Walker, Lee Walker, and Etta Briley, for a partition of his farm, which included the 320-acre tract above referred to, in which it was alleged that the farm was of the reasonable value of $4,000, that plaintiff owned an undivided three-fourths interest therein, and that each of the defendants owned an undivided one-twelfth interest. That suit was dismissed on April 7, 1903. On April 8, 1903, Mrs. Clark executed a deed of conveyance to her father of her undivided one-twelfth interest in the farm, and all other property belonging to the community estate of her mother and father. The consideration paid to Mrs. Clark for that deed was $500. It appears that Mrs. Briley and Lee Walker were not paid anything for their interest in their mother's estate, as they agreed to permit their father to use the same as long as he lived.

By one assignment complaint is made of the rejection of the proffered testimony of Mrs. Irby to a conversation with her father during the month of March, 1901, when she executed the deed to him to her interest in her mother's estate for a consideration of $350. If permitted to do so, she would have testified that on the date referred to, she came to Mr. Kuteman's office, an attorney who had prepared the deed for her to sign and had written her to come in and execute it, and at first she refused to execute the deed; that later in the day she met her father on the street, by whom she was asked where she had been, and when witness told him that she had been to Mr. Kuteman's office, where she had refused to sign the deed, that her father put his arm around her and said:

"Emma, I want you to deed it. Come back up to Mr. Kuteman's office and sign it. You will get your part of the estate. I intend to treat all my children alike."

The witness would have testified further, if permitted to do so, that later on, just before she moved to Ft. Worth, her father had a conversation with her in which he expressed some concern with respect to her chances for a livelihood in Ft. Worth, and in that con-

nection told her that if at any time she needed help to let him know and he would help her, and added, "What I have I intend for my children to have some day."

Complaint is made also of the exclusion of the proposed testimony of Mrs. Clark, to the effect that while she and her father were living on the 320-acre farm referred to above, and prior to the year 1898, he told her that he intended to treat all his children alike; that she would get her part of the home place down there some day; that she had been good to him and had taken care of him after his wife had died, when all the other children had left him. And on a later occasion, after her father had moved from the farm and was living with his son, Lee Walker, and after her brother, Lee Walker, had assaulted her, and while she was trying to induce her father to go back to the farm where he and she could live and keep house as they had done before moving to Lee Walker's farm, her father said to her:

"Mattie, you need not worry. You will get your part of the property."

Another assignment is addressed to the action of the court in permitting Lee Walker, named in the will as a beneficiary, to testify, over contestants' objection, as follows:

"That his father, G. B. Walker, told him, Lee Walker, that he had made a will some time during the year 1903, which was several years after the date of the will. That said G. B. Walker told him, Lee Walker, that he first thought of making a deed to his property and convey to him and his sister, Etta Briley, saying that he had settled with all of his other children; that he had paid them for their interest in the property and he wanted him and Etta Briley to have the property. And he, Lee Walker, told his father that he would rather he would not make a deed; it would not look right for him to do that; and later on his father, G. B. Walker, told him that he had made the will, and gave one half of the land to him and the other half to Mrs. Briley. That he had Judge McCall to write the will, and his father asked him, Lee Walker, to take the will and put it in the Citizens' National Bank for safe-keeping. That he was losing his eyesight, and during the year 1911, he, Lee Walker, took the will and put it in the bank, where it remained until after his death. That some time in November, 1912, his father requested him to go and get Judge McCall and have him come to see him and to bring with him one or two young men, as he wanted to talk with them about his business, saying that he had learned that Judge McCall was in bad health and might die before he, G. B. Walker, would die, and that he went and got Judge McCall and his son, Jim L. McCall, at his father's request, to come to see him at his home. That his father often talked to him about his business affairs. That his father said all the children had got their part of the estate except him and Etta Briley, and they had not given him any trouble, but that Mattie and Emma had given him trouble. That he had spent money on the other children, sent Mattie to school, but that he had not spent any money on Etta; she never went to school. That his father told him, Lee, that he was kind and good to him, and his wife was so good to him, and he was a heap of trouble to them, and he wanted him to have all the personal property, such as the rents from the farm for their trouble in caring for him. That his father told him to write to Etta Briley to come up to see him, as he wanted to tell her about the will, which he, Lee Walker, did, and Etta came to see her father a short time before he died, and while she was here on that trip, his father told her about the will he had made."

The objection urged by the proponent to the proposed testimony of Mrs. Clark and Mrs. Irby was that those witnesses were incompetent to give such testimony under the provisions of article 3690, Vernon's Sayles' Texas Civil Statutes; and the same statute was invoked by contestants as a basis for their objection to the testimony of Lee Walker set out above. That article of the statute is as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Many decisions can be found in the reports of this state construing that statute, and the books abound with decisions construing similar statutes in other states. Perhaps it would be impossible to harmonize many of the decisions, even in our state, some of which, at least, appear to be in conflict with the decisions of other states. See 40 Cyc. 2256 to 2532, for a general discussion of the question and the collation of various decisions thereon.

In order to determine whether or not the statute would operate to exclude such testimony, it is proper to consider: First, whether or not the suit is of either of the classes mentioned in the statute; second, whether or not the witness is a party to the suit, within the meaning of the statute; and, third, whether or not the proposed testimony relates to a transaction with or a statement by the deceased.

[1] It is well settled that the statute is applicable in a proceeding to probate a will, as well as in a proceeding to set aside the probate thereof. It was so held in Lewis v. Aylott, 45 Tex. 190, which seems to have been the pioneer case, and it has been frequently cited with approval by our Supreme Court. See Martin v. McAdams, 87 Tex. 225, 27 S. W. 255; Ross v. Kell, 159 S. W. 119; Kell v. Ross, 175 S. W. 755, and numerous other cases that might be cited.

[2] We consider it well settled by the decisions of this state that one who has an interest in the controversy, and who will be bound by the judgment to be rendered, is a party to the suit within the meaning of the statute, even though he is not such a party nominally. That was clearly the decision in Simpson v. Brotherton, 62 Tex. 170, in which it was held that a wife, whose name did not appear as plaintiff in the suit brought by her husband, was incompetent to testify by reason of the fact that the recovery, if any, by her husband would be community prop-

erty, and that any judgment rendered against her husband in the suit would be binding upon her. See, also, 40 Cyc. 2275, 2278.

Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309, was a suit by the administratrix of A. J. Gilder, deceased, to recover title to a strip of land which was claimed by the city as a public street. Thomas Dwyer, a purchaser of property abutting on the street, was permitted to testify to declarations made by the deceased, who sold the property to him, tending to show that he had dedicated the strip of land in controversy as a public street; the question whether or not there had been such a dedication being the controlling issue in the suit. Upon complaint of the admission of that testimony, our Supreme Court held that it was properly admitted, and distinguished that decision from the former decision of Simpson v. Brotherton, in the following language:

"There the suit was brought by the husband to recover an interest in land, which interest was claimed as community property of himself and wife. Her testimony was not held inadmissible because of her interest in the proceeding, but upon the ground that, though not named as such, she was in fact a party to and would be bound by any judgment that might be rendered against her husband. In this case Dwyer was in no sense a party to the proceeding, and will not be concluded by the judgment."

Newton v. Newton, 77 Tex. 508, 14 S. W. 157, was a suit by a legatee upon a promissory note given to the deceased. The defendants, in order to sustain their plea of a want of consideration for the note, offered the testimony of the wife of one of them relative to a conversation with the deceased, tending to establish that defense, which testimony was excluded by the trial court. In the Supreme Court, the defendants urged that the testimony was admissible on the ground that the witness was not a party to the suit, and therefore was competent. The Supreme Court held that contention to be untenable, for the reason that a judgment against the husband would have been a judgment against the community property in which she had an interest, and therefore the witness was a real, though not a nominal, party to the suit, citing in support of that decision Simpson v. Brotherton, supra. But the Supreme Court held, further, that the suit was not by an executor, administrator, or guardian, nor by or against any heir or legal representative of the deceased, and therefore the proposed testimony of the witness was not prohibited by the statute referred to. All of the property of the deceased had been devised to Mary Newton, who was the plaintiff in the case, and she brought the suit as legatee only, and not as administratrix or executrix. The defendants were not sued as heirs or legal representatives, but as simple debtors, and in that decision the court said:

"A legatee is not in legal signification an heir; nor do we think that devisees and legatees are embraced in the terms 'legal representatives.' Executors and administrators, and if there be neither, the heirs, are the legal representatives of the deceased person."

Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705, was a suit by a widow against the devisees under her husband's will for title to certain property, which she claimed as her separate property. And it was held that she was not precluded by the statute from testifying in her own behalf, the court using the following language:

"The party making the objection was interested in defending only as a devisee under the will of Jas. S. Mitchell. This court decided in the case of Newton v. Newton, 77 Tex. 508 [14 S. W. 157], that in that capacity she does not come within the provisions of said article."

The plaintiff, suing in her own right and claiming the property as her separate property, was not suing as an heir or legal representative, and, the defendants defending only as devisees, the suit did not come within the class of cases mentioned in the statute.

The language quoted, to the effect that it had been decided in Newton v. Newton, that devisees and legatees do not come within the provisions of the statute, is calculated to mislead, unless it be kept in mind that the ruling in Newton v. Newton was simply that devisees did not come within the meaning of "heirs" or "legal representatives"; and the language quoted from Mitchell v. Mitchell, apparently, has led to some confusion in the decisions, in which the language is often referred to or quoted without explanation of its true meaning. The decision in Newton v. Newton did not purport to hold that a devisee would not, in any event, be prohibited by the statute from testifying. It was simply that the case was not within either class of cases covered by the statute. This distinction was observed in Bradshaw v. Roberts, 52 S. W. 574, and other cases which might be cited.

[3] We shall not undertake to review the many decisions of our courts upon that statute. We believe that few, if any, can be found which, when properly understood, necessarily overrule or conflict with the decisions discussed above. From those decisions we conclude that Lee Walker was a party to the suit within the meaning of that statute, as much so as were contestants and the proponent. He was interested equally with the proponent, and a judgment against the proponent would be binding upon him also.

As shown, the proposed testimony of the two contestants and the testimony of Lee Walker that was admitted all clearly related to statements by, or transactions with, the deceased within the meaning of the statute. From the testimony on the trial, it appears that Lee Walker declined to join with his sister, Mrs. Briley, in her application to probate the will, and for the grant of letters testamentary to both of them, although he was not made nominally a party to the proceedings, either by the proponent or the contestants. The proponent insists

that he was not rendered incompetent as a witness by the statute for two reasons: First, because he was a devisee under the will; and, second, because of his refusal to join in the application to probate the will. Lee Walker, being a party in interest, was in no sense an "opposite party" to the proponent, within the meaning of the statute giving the proponent the right to his testimony. He and Mrs. Briley were interested alike in upholding the will. They were in no sense hostile to each other. Being a party in interest, Lee Walker was necessarily an opposite party to contestants rather than to proponent. Rascoe v. Walker-Smith Co., 98 Tex. 565, 86 S. W. 728.

For the reasons indicated, we conclude that there was no error in excluding the proffered testimony of Mrs. Irby and Mrs. Clark, but that the testimony of Lee Walker set out above, which was admitted, should have been excluded.

The proponent insists, in effect, that the evidence relied on by contestants to set aside the will, upon the ground that the execution of it was not the free and voluntary act of the testator, but was the result of undue influence exercised upon him by Lee Walker, viewed in its most favorable light, was insufficient to sustain the contest upon that ground, and that, therefore, regardless of the question whether or not the court erred in admitting the testimony of Lee Walker, the judgment of the trial court in admitting the will to probate should be affirmed. Presumably the trial court took the same view of contestant's evidence, and accordingly peremptorily instructed a verdict in favor of the proponent, and his action in so doing is assigned as error by the contestants.

[4] In support of her contention just stated, counsel for proponent, in addition to discussing the weight of the testimony offered by contestants, urge with great persistence the testimony of a number of witnesses introduced by the proponent, tending to show that the testator, at the time he made the will and thereafter, was in full possession of his mental faculties and a man of strong will, who could not be unduly influenced by any one, and was not so influenced by Lee Walker, or any one else, in his election to make the will he did make. But all such testimony will have to be excluded from consideration in determining the question now under discussion. In Harpold v. Moss, 101 Tex. 540, 109 S. W. 928, the following is quoted with approval from Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323:

"The plaintiffs in error having introduced sufficient evidence to support a verdict in their favor, were entitled to have the issue submitted, no matter how strong the contradictory evidence might be. In determining this question we must consider the evidence in its most favorable aspect for the plaintiffs in error, disregarding conflicts and contradictions; they raised the issue of credibility, which was a question for the jury."

In Wininger v. F. W. & D. C. Ry. Co., 105 Tex. 56, 143 S. W. 1150, the following was said by our Supreme Court:

"The honorable Court of Civil Appeals had authority to reverse the judgment of the trial court on the preponderance of the evidence, but it could not render the judgment if, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff."

The test there made with respect to the power of the Court of Civil Appeals to render a judgment after a reversal applies also to the authority of the trial judge to peremptorily instruct a verdict in favor of the defendant. In 1 Schouler on Wills, § 227, it is said:

"Undue influence is defined as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist."

That definition was quoted with approval in Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98, and in other decisions which might be cited. The following from 1 Bigelow on Frauds, page 571, was quoted with approval in Wetz v. Schneider, 34 Tex. Civ. App. 201, 78 S. W. 394:

"Undue influence upon the testator consists in substituting virtually the will of the person exercising it for that of the testator. Fraud upon the testator consists in making that which is false appear to him to be true, and so affecting his will. Undue influence need not be attended at all with deception or circumvention. Fraud need not be attended with undue influence, except in so far as the misrepresentation amounts to influence. There need be no pressure, such as is necessary to constitute influence."

In Goodloe v. Goodloe, 47 Tex. Civ. App. 493, 105 S. W. 533, in which a writ of error was denied by our Supreme Court, 102 Tex. 583, the following is said:

"The term 'undue influence' is not difficult of comprehension, but is of definition. The definitions given by the courts are varied to meet the phase of the case then under consideration. The definitions are not so clear, to the untrained mind especially, as the term itself."

In the same case the following quotations were made with approval:

"Undue influence may be exercised secretly as well as openly, and this is especially possible where a confidential relation exists between the principal devisee and the testator and they dwell in the same house together" (citing cases). "Such influence may be exerted in many ways: By violence; by force; by threats; by deceit or fraud; by excessive importunity; or by the silent resistless power which the strong often exercise over the weak or infirm" (citing In re Tyner's Case, 97 Minn. 181, 106 N. W. 898).

Also the following from Taylor v. Wilburn, 20 Mo. 306, 64 Am. Dec. 186:

"Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to that influence, and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time the act is done. So that the inquiry, in such cases, is not whether an undue influence was exerted at the time of

the execution of the will, but whether an influence had been acquired, and did operate in the disposition of his property by the testator."

The following from the opinion of Chief Justice Fly in Holt v. Guerguin, 156 S. W. 581, correctly expresses a familiar rule of law:

"The existence of undue influence is a question of fact, and from its very nature, like all fraudulent and vicious schemes, hides its features behind masks and operates in dark and secret places and in covert ways, and proof of it must usually be by circumstantial rather than by direct testimony. Those circumstances may be the condition of the testator's mind, his age, weakness, and infirmity, his surroundings and the circumstances attending the execution of the will, the opportunity for the exertion of such influence as would trammel or destroy the exercise of free agency in the disposition of the property, the words and acts of testator and beneficiary, the existence of confidential relations between them, and the injustice, unreasonable and unnatural character, of the will."

[5] It is also a familiar rule that:

"Undue influence cannot be presumed or inferred from opportunity or interest, but must be proved to have been exercised, and exercised in relation to the will itself, and not merely in other transactions." Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98; McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 611.

Also that mere persuasions or entreaties will not invalidate a will on the ground of undue influence. Robinson v. Stewart, 73 Tex. 267, 11 S. W. 275. It is also necessary to prove something more than a mere suspicion of undue influence. Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606; Trezevant v. Rains (Sup.) 19 S. W. 567.

With the foregoing announcement of general principles, we shall now proceed to discuss in a general way the proof offered by the contestants to sustain the contest on the ground of undue influence.

[6] Of course, in order to establish their contention, it was incumbent upon the contestants to show: First, that Lee Walker had the opportunity with respect to time and place to exercise undue influence upon his father to make a will such as was made; second, that the condition of testator's mind was such that he could be unduly influenced by Lee Walker; and this involves the further proposition that Lee Walker was capable of so influencing his father in the matter of making the will; third, that Lee Walker did exercise undue influence upon the testator in consequence of which the will does not represent the free and voluntary act of the testator, but the dictation of Lee Walker.

[7] We deem it unnecessary to do more than to refer briefly, and in a general way, to the testimony which we conceive to be of such probative force to show that the issue whether or not the execution of the will was the result of undue influence exercised upon the testator by Lee Walker should have been submitted to the jury as a question of fact upon appropriate instructions from the court, and in deciding that question we shall, in accordance with the rule announced in the decisions above referred to, accept as true the testimony tending to support the contention of contestants, and to the exclusion of all evidence introduced in conflict therewith.

Mrs. Clark, one of the contestants, had for a long time lived with her father and cared for him most tenderly; preparing his meals, and giving him every attention which a daughter could bestow, during most of which time her father was unable to attend to business, weak in body and broken in health. She was practically without means of support, while her brother, Lee Walker, owned a large farm, together with other property, and was in independent financial circumstances. According to the evidence offered by contestants, the testator owed a greater moral, as well as parental, obligation to provide for Mrs. Clark than he did for either of the beneficiaries named in the will, which, therefore, was a very unnatural will, especially in so far as it excluded Mrs. Clark from any participation in the estate. According to the testimony, the exclusion of Mrs. Irby was likewise unnatural, but perhaps not to as great an extent as in the case of Mrs. Clark. The testator was 80 years old at the time of the execution of the will, and according to the testimony of Dr. Ferry and Dr. MacNelly, a man of testator's age, and in his physical condition, would be more easily influenced than a man not so advanced in years and in better health. And according to the testimony of other witnesses, who were well acquainted with the testator, his mental condition, as well as his physical condition, was declining at the time the will was executed. The testimony further showed that after Mrs. Clark had lived with her father on his farm for a number of years, and looked after and cared for him, Lee Walker induced him and Mrs. Clark, to move to his farm and live with him; that after living with him a short time, Lee Walker married, and shortly after such marriage, on account of differences between Mrs. Clark and Mrs. Lee Walker, Lee Walker assaulted his sister, Mrs. Clark, and drove her from his home; that he made to her the threat at the time that he would see to it that she should never get any of his father's property; that he pleaded guilty to the criminal charge of assault upon his sister, and later suffered a judgment by default against him in a civil action for damages for such assault instituted by his sister, which judgment was paid off by his father, all of which happened prior to the execution of the will. The testimony further showed that prior thereto, Lee Walker stated that he was entitled to one-half of his father's farm as compensation for services performed while living with his father and before he had left his father's home to engage in business on his own account. It was further shown that after Mrs. Clark was driven from Lee Walker's home, his father continued to live with his said son for a few years, and then moved back to his own farm, where he resided temporarily, later returning to the home of Lee

Walker, where he lived for several years and until the date of his death; that during all the time Mrs. Clark lived with him in his own home and looked after and cared for him, he treated her with the same love and affection that could be expected of any father. There was other testimony, to the effect, that after Mrs. Clark had been assaulted by her brother and driven from his home, the testator began to complain that she had mistreated her father. While the testimony shows that the will was executed after Dr. Walker's return to his farm, and during his temporary stay thereon, and before his return to his son's home, it further shows that during that temporary stay, the close relations between himself and Lee Walker continued. The evidence further shows that for a number of years before the death of the testator, Lee Walker rendered his father's property for taxation in his own name, and virtually had charge of his father's business. Mrs. Clark testified, in part, as follows:

"I first learned of the will the next day after my father died. Lee (meaning Lee Walker) told me. When Lee told me I was in the house about five or six feet from the rest of them. He didn't show me the will. Lee said, 'Mattie, father made a will, and I don't know what there is in it,' and he said a few more words, I don't know what they were, and said, 'Now, I don't know what is in the will, but I don't believe it can be broken.' That was the very words. He says, 'You know my father was not easily influenced.'"

According to other testimony offered by proponent, Lee Walker was informed of the contents of the will long before the death of his father. The evidence further shows that Lee Walker had not spoken to his sister, Mrs. Clark, from the time he drove her from his home until his father died and Mrs. Clark came to his home to be present at the burial.

[8] The fact that testator had, in the year 1901, paid to Mrs. Irby $350 for her claim upon her mother's interest in the community property of herself and father, and later paid to Mrs. Clark $500 for her claim of like character, in connection with the further fact that neither Mrs. Briley nor Lee Walker demanded the payment for their interest in their mother's estate, tends to show a probable motive for excluding the contestants from sharing in the estate, but it is not conclusive on that issue, especially in view of the further fact that the property devised by the will was valued by the appraisers of the estate at $5,000.

[9] Nor would the fact that the testator lived 12 years after executing his will without revoking it in any manner be conclusive against contestants upon the issue of undue influence, since the jury might reasonably conclude from all the evidence that if undue influence had been exercised to bring about the execution of the will, it continued thereafter to prevent a revocation of it until the death of the testator, who was living with Lee Walker.

The proof was ample to show that Lee Walker had the opportunity, with respect to time and place, to exercise the alleged undue influence upon his father.

The ill will cherished by Lee Walker towards his sister Mrs. Clark, which prompted him to commit so unnatural and unmanly an act as the assault upon his sister, and which was so deep-seated and enduring as to cause him to refuse to speak to her from that date to the date of his father's death, a period of some 15 years, especially when considered in connection with the further probable motive of self-interest in the matter of financial gain, was fully sufficient to support a finding by the jury that he executed his threat to induce his father to disinherit her, if he found such efforts on his part necessary to that end, and if he was able to influence his father to that extent. And the fact that his father did leave a will disinheriting Mrs. Clark in exact accord with said threat; the admission implied in the threat that he, Lee Walker, would be able to so influence his father; the fact that he was in a position to know whether or not that admission was, in fact, true; the fact that the exclusion of contestants, especially Mrs. Clark, from a share in the estate was an unnatural provision under all the circumstances; the fact that testator was 80 years of age, broken in health, and of failing mental faculties; and the close personal association and business relations between him and his son, Lee Walker—taken all together, and considered in connection with the other facts and circumstances in evidence, were sufficient, prima facie, to support a further finding by the jury that the execution of the threat made by Lee Walker to his sister was accomplished by the exercise by him of undue influence upon the testator.

The cases of Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98, and Helsley v. Moss, 52 Tex. Civ. App. 57, 113 S. W. 599, as well as other cases in which it was held that the evidence was insufficient to show undue influence, are pressed upon us by the proponent as authority to sustain the action of the trial court in instructing a verdict in this particular case. Necessarily the facts of each of those cases are different; and, while strongly persuasive, we do not deem them conclusive in the present suit. Every case must be determined by its own peculiar facts, with no controlling guide except the general principles of law governing.

[10] Objections have been urged by appellee to all of the assignments discussed above. The objection made to the assignment complaining of the action of the trial court in giving the peremptory instruction is that the assignment is not a full copy of the ground alleged in the motion for new trial as a

basis for the contention there made that the court had erred in giving that instruction. That paragraph of the motion for new trial set out, at great length, the evidence claimed as sufficient to show that the court erred in giving that instruction. In the assignment presented in appellant's brief, a part of the testimony so set out was omitted, but a great deal of evidence is included and a sufficient amount to point out the error complained of. By article 1612, Vernon's Sayles' Texas Civil Statutes, it is provided:

"An assignment shall be sufficient which directs the attention of the court to the error complained of."

And applying that test, we are of the opinion that there is no merit in the objection to the assignment complaining of the peremptory instruction. Long v. Red River, T. & So. Ry. Co., 85 S. W. 1048; McCarthy v. Mutual Reserve Fund Association, 32 Tex. Civ. App. 548, 74 S. W. 921; Hough v. Fink, 141 S. W. 147; Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105.

As our conclusion upon the assignment last mentioned requires a reversal of the judgment and a remand of the case for another trial, it was not improper, in any event, to discuss the merits of the other assignments, as we have done, for the guidance of the court upon another trial, even though we should be of the opinion that the objections to those assignments should be sustained. Hence it is unnecessary to set out those objections, or to express any opinion upon their merits.

For the reasons indicated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[11] Appellee in her motion for rehearing for the first time challenges the jurisdiction, both of the district court and of this court, to hear and determine this case. She invokes the provisions of article 3634, Vernon's Sayles' Texas Civil Statutes, which is as follows:

"Where the party who desires to appeal is unable to give the appeal bond, it shall be sufficient if he file with the county clerk, within the time prescribed for giving such bond, an affidavit in writing that he has made diligent effort to give such bond and is unable to do so by reason of his poverty, and such affidavit shall operate a perfection of the appeal in respect to the matter of costs."

The appellant, Mrs. Mattie Clark, within 15 days from the rendition of judgment in the county court, filed an affidavit for herself and her cocontestant Mrs. J. D. Irby, stating, in part:

"The said Mrs. Mattie Clark and Mrs. J. D. Irby, contestants, desire to prosecute an appeal from the judgment as rendered in the county court of Parker county, Tex., to the honorable district court of Parker · county, Tex., same being the Forty-Third judicial district of Texas, and that they, the said Mrs. Mattie Clark and Mrs. J. D. Irby, are unable to pay the costs of such appeal, or any part thereof, or to give security therefor."

That affidavit was made before the judge of the county court of Parker county, and the record contains an order of that court, reciting:

That the application of Mrs. Clark and Mrs. Irby for leave to prosecute their appeal to the district court without giving a bond for costs and upon the affidavit above mentioned was heard by the court in regular session; that at that hearing Mrs. Clark and the proponents, together with their attorneys, all appeared; that "issue on said application of inability to make an appeal bond by contestants was joined, and the court, after hearing the evidence in support thereof, and the argument of counsel, is of the opinion that said application is sustained by the proof, and that said contestants, Mrs. Mattie Clark and Mrs. J. D. Irby, are unable to make an appeal bond, or give security therefor on an appeal to the district court of Parker county, Tex.; it is therefore, ordered and adjudged by this court that the contestants, Mrs. Mattie Clark and Mrs. J. D. Irby, may appeal, without bond, from the judgment rendered in this cause in this court to the honorable district court of Parker county, Tex., same being the Forty-Third judicial district of Texas, and the clerk of this court is directed to make up a proper transcript and record of the proceedings had in this court, and, together with the will and other record papers send to the clerk of the honorable district court of Parker county, Tex."

The sufficiency of the affidavit above mentioned was not questioned in the district court nor upon original hearing in this court, but now for the first time upon a motion for rehearing appellee says that the affidavit referred to above was insufficient to give the district court or this court jurisdiction because: (1) It fails to state that Mrs. Clark and Mrs. Irby had made diligent effort to give an appeal bond, and were unable to do so by reason of their poverty; and (2) because the affidavit was not signed by Mrs. Irby as well as by Mrs. Clark.

As noted already, the court heard proof upon the matters stated in the application. Just what proof he heard in addition to the affidavit does not appear, and the contention of appellee now is based alone upon the insufficiency of the affidavit. In Stewart v. Heidenheimer, 55 Tex. 644, it was held that the omission from an affidavit of inability to pay the costs of court "or any part thereof," as required by the statute, was no valid objection to the affidavit. In that opinion it was further held that a contest of the affidavit filed after the expiration of the time allowed by law for perfecting an appeal came too late. In Morrison v. Brooks, 189 S. W. 1094, it was held that such an affidavit was not invalid because made by only one of the two appellants in the case. In Cason v. Connor, 83 Tex. 26, 18 S. W. 668, which was an appeal from the district court of a case originating in the justice court, the following was said in reversing and remanding the cause:

"It is first assigned as error that the court below should have dismissed the appeal of the intervener T. C. Connor from the judgment of

the justice court because his appeal bond was not made payable to J. L. Westfall, as well as to the appellants, and because, as it is claimed, the judgment of the last-named court was not final. How the district court could reasonably be expected to have taken such action we are unable to perceive, since no such issue or question, by motion or otherwise, was raised in that tribunal. In view of another trial, we may say that the motion to dismiss, should one hereafter be filed, would come too late after the parties have all voluntarily submitted to the jurisdiction of the district court."

To the same effect are Cason v. Laney, 82 Tex. 317, 18 S. W. 667, Saylor v. Marx, 56 Tex. 90, Zapp v. Michaelis, 56 Tex. 395, and Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315. All of which authorities settle the question beyond controversy, as we think, that the grounds of objections now urged to the affidavit were waived, even though it could be said that the failure to include in the affidavit the additional statement that Mrs. Clark and Mrs. Irby had made diligent effort to give a bond and were unable to do so by reason of their poverty rendered the affidavit defective. We are of the opinion, further, that appellee is precluded from raising those objections by reason of the fact that the sufficiency of the affidavit and the proof heard in support thereof were adjudicated by the county court upon issue joined by appellee, and not even an exception was reserved in that court by appellee to the order so made in any manner questioning the sufficiency of such affidavit and proof; to say nothing of her failure to raise such questions in the district court or in this court upon original hearing.

For the reasons indicated the contention of appellee that the district court and this court were without jurisdiction cannot be sustained. Other grounds of the motion for rehearing have been duly considered, and as the questions therein presented have already been discussed in our original opinion, they are overruled, without further discussion, as we think they are sufficiently disposed of adversely to appellee in that opinion. Accordingly the motion for rehearing is in all respects overruled.